UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Mary C. Puglisi,

         Plaintiff,

  v.

Commissioner of Social Security,

         Defendant.

**Decision and Order**

18-CV-1159 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 6, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 11, 13.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff criticizes the ALJ for using lay opinion to fill in the rejected portions of the only medical source statement on record. The ALJ found numerous severe impairments related to plaintiff's lumbar spinal health, including spinal stenosis, disc surgery, decompression surgery, radiculopathy, and degenerative disc disease. [17.] After reviewing the record, the ALJ found plaintiff capable of performing light work with restrictions including the freedom to change positions after one hour while on task. [18.] In forming the RFC, the ALJ gave some weight to a consultative examiner, Dr. Donna Miller, who included a medical source statement in her consultative report. Plaintiff in essence is criticizing the ALJ for giving some weight to Dr. Miller's report without explaining what other portions of the record received some or controlling weight. "Here, the ALJ's RFC finding relied on 'some' weight to the consultative internal medicine examiner but largely summarized the findings without tying the opinion to the physical demands of 'light' work." (Dkt. No. 11-1 at 19; *see also* Dkt. No. 17 at 3.) The Commissioner responds by conceding that no single treatment provider received controlling weight but also by highlighting that plaintiff is not according enough weight to the overall record:

> Significantly, Plaintiff does not argue that Dr. Miller's opinion merits greater weight. On the contrary, she agrees that the opinion is "incomplete," conceding that opinions "from a one-time consultative physician are not ordinarily entitled to significant weight, in particular where that physician does not have the benefit of the complete record." Pl. Br. 20-21 (quoting *Callahan v. Berryhill*, No. 6:17-cv-06245(MAT), 2018 WL 1616058, at *5 (W.D.N.Y. Apr. 4, 2018)). The issue before the Court, then, is whether the ALJ reasonably considered the record as a whole in formulating her RFC (Tr. 14-21). Unable to cite to any treating opinions or other evidence clearly supporting additional RFC restrictions, Plaintiff argues that, without a complete and credible opinion to rely on, the ALJ necessarily "used [her] lay opinion to interpret bare medical findings." *Id.* at 21.

4

>           If Plaintiff is suggesting that the ALJ's RFC assessment must correspond to a
> medical opinion, her position is plainly at odds with agency regulations and Second
> Circuit caselaw. *See* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual
> functional capacity based on all the relevant evidence in your case record.");
> *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) ("Even
> where the ALJ's determination does not perfectly correspond with any of the
> opinions of medical sources cited in his decision, however, the ALJ was entitled to
> weigh all of the evidence available to make a residual functional capacity finding that
> was consistent with the record as a whole."). Indeed, the Second Circuit has rejected
> Plaintiff's argument where, as here, the ALJ's assessment is supported by substantial
> evidence. *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (finding that
> "because the record contained sufficient other evidence supporting the ALJ's
> determination and because the ALJ weighed all of that evidence when making his
> residual functional capacity finding, there was no 'gap' in the record and the ALJ did
> not rely on his own 'lay opinion'").

(Dkt. No. 13-1 at 9–10.)

The Commissioner has the better argument here. An electromyogram on December 5, 2014 uncovered "no electrodiagnostic evidence of peripheral neuropathy." [275.] An examination on June 9, 2015 showed that plaintiff had hypersensitive sensation, disc herniations or disease, and mild spinal stenosis but also that she had normal leg reflexes and a normal motor examination. [266.] A follow-up examination on June 30, 2015 suggested nerve root abnormalities and led to a recommendation of surgery, but the physician, Dr. James Egnatchik, did not find "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listing 1.04). Plaintiff's disc fusion surgery on August 12, 2015 went well as far as the procedure itself [418], though plaintiff did not feel any better as of September 2015 [417]. During the consultative examination of October 23, 2015, plaintiff reported to Dr. Miller that she did not have the radiating or "neuro-anatomic distribution of pain" that would have been required by Listing 1.04. [437.] Dr. Miller found that plaintiff had no acute distress, a normal gait and stance, and full strength despite mixed results with range of motion. [438–39.] Dr. Miller offered the medical source statement that plaintiff "has moderate to severe limitation for

5

heavy lifting, bending, carrying, reaching, pushing, and pulling." [440.] Physical therapy and an epidural injection in February and March 2016 improved plaintiff's pain and reduced her medication use. [447.] Plaintiff underwent additional disc surgery on February 7, 2017. [455.] By the time of an examination on September 12, 2017, plaintiff continued to have chronic pain but had full strength and a normal gait. [549.] Plaintiff also had full range of motion in her extremities. [623.] An examination on October 18, 2017 showed that plaintiff had bilateral foot pain and tingling but normal reflexes and a normal gait. [663.] Neurosurgeon Dr. Eric Roger evaluated plaintiff on October 16, 2017 and heard continued reports of pain but found a relatively normal gait and full strength. [673–74.] *Cf. Burt v. Berryhill*, No. 17-CV-00922F, 2019 WL 580589, at *3 (W.D.N.Y. Feb. 13, 2019) ("Despite Plaintiff's complaints of constant back and bilateral knee pain, upon examination by Dr. Miller, Plaintiff appeared in no acute distress, walked with a normal gait, could walk on heels and toes without difficulty, had normal stance, used no assistive devices, required no help changing or getting on and off the examination table, and was able to rise from a chair without difficulty, although Plaintiff could squat to only 75%, and had some decreased range of motion in his lumbar spine and knees.") Dr. Roger concluded that plaintiff's foot pain was "extremely unlikely" to be related to spinal stenosis and that plaintiff had indications of radiculopathy but not neuropathy. [674–75.] At another examination on November 2, 2017, plaintiff again showed pain but also full strength and a negative straight-leg raise test. [687.] Plaintiff underwent surgery on April 5, 2018 for insertion of a spinal cord stimulator. [99.] The ALJ took note of all of these clinical visits, and plaintiff has offered no specific objection to the clinical findings of full strength, normal gait, and full range of motion in the extremities. *Cf. Harrison v. Berryhill*, No. 16-CV-7220 (KMK), 2019 WL 580748, at *8 (S.D.N.Y. Feb. 13, 2019) (ALJ assessment of lumbar stenosis and radiculopathy affirmed where based on a "close review of the treating notes"). Substantial evidence

6

thus supported how the ALJ considered Dr. Miller's consultative examination in the context of the overall record.

Plaintiff also objects to the Appeals Council's decision that newer medical records generated between October 2017 and April 2018 did not have a reasonable probability of changing the Commissioner's final determination. "This evidence was submitted after the ALJ's decision from February 21, 2018. (Tr. 8-28). The evidence at issue is related to hers existing conditions of neuropathy and thoracic degenerative disorders, and chronic pain management during the relevant time period. It is probative, not merely cumulative, and would reasonably influence the ALJ's determination to favor disability." (Dkt. No. 11-1 at 25.) The Commissioner responds that the clinical results in the new records "were entirely normal with the lone exception of mild slowing of the plantar motor nerve responses." (Dkt. No. 13-1 at 15.) "Moreover, Plaintiff ignores the EMG report's notations of full strength, normal bulk and tone, and full reflexes on examination, which further support the ALJ's finding that her allegations were not entirely consistent with the fair-to-good physical examination findings of record (Tr. 21, 108)." (*Id.* at 16.)

The Commissioner again has the better argument. The Commissioner, through the Appeals Council or otherwise, has the ability to review or to reopen a claim based on new and material evidence. *See* 42 U.S.C. § 405(g); 20 C.F.R §§ 404.970(a)(5), 404.988(b), 404.989(a)(1). "The Social Security Act provides that a court may order the Secretary to consider additional evidence, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. Thus, an appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in

addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently. Finally, claimant must show (3) good cause for her failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (internal quotation marks and citations omitted). Here, putting aside any issues about timeliness, the newer records submitted to the Appeals Council do not show results that would cross the threshold for reconsideration. An electromyogram conducted on November 13, 2017 showed a slowing of plantar motor nerve responses bilaterally but "no electrodiagnostic evidence of a right or left lumbosacral radiculopathy." [112.] The newer records show that plaintiff continued to report pain in late 2017 but had full strength and a normal gait. [105.] In all, the Commissioner is correct that the records submitted to the Appeals Council do not show a change in clinical course from the records that the ALJ considered.

### III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 13) and denies plaintiff's cross-motion (Dkt. No. 11).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                       __/s Hugh B. Scott_____
                                                       Hon. Hugh B. Scott
                                                       United States Magistrate Judge

DATED: March 13, 2020